IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| BESSIE TORRENCE, ROSHONNEE ORR, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | No. 5:10-cv-412 (CAR) |
| PICERNE DEVELOPMENT, ROBINS LANDING, LP, and SHARON HEARD, | : | |
| | : | |
| Defendants. | : | |

### ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Picerne Development, Robins Landing, LP, and Sharon Heard's (collectively "Defendants") Motion for Summary Judgment [Doc. 47]. Therein, Defendants assert that there is no genuine issue of material fact with regard to *pro se* Plaintiffs Bessie Torrence and Roshonnee Orr's claims of intentional race discrimination, in violation of 42 U.S.C. § 1981.[1] After receiving no response from Plaintiffs, the Court directed them to respond. [Doc. 53]. In lieu of a response,

---

[1] To the extent that Defendants argue that summary judgment should be granted with respect to Plaintiff Stephanie Jones, Defendants' argument is moot. In the Court's Order entered March 2, 2012, Plaintiff Jones was dismissed without prejudice for failure to prosecute her claim. [Doc. 71]. Thus, this Order resolves the remaining § 1981 claims brought by Plaintiffs.

1

however, Plaintiffs filed an Affidavit that will be considered by the Court. [Doc. 67]. After carefully considering Defendants' motion and the relevant facts and law, Defendants' Motion for Summary Judgment [Doc. 48] is **GRANTED**.

## BACKGROUND

Plaintiff Roshonnee Orr, on behalf of herself and her minor children, "De," "Dea," and "Da," and Plaintiff Bessie Torrence brought this suit against Defendants, alleging race discrimination under § 1981. Torrence is Orr's mother and Orr's minor children's grandmother. At the time of the dispute, Torrence and the Orrs ("Plaintiffs") lived in the same apartment at the Robins Landing Apartments ("Robins Landing"). Both Torrence and Orr are named in the Lease Agreement ("Agreement"). Defendant Robins Landing, LP, owns the property where Robins Landing is located, and Defendant Sharon Heard ("Heard") was, at all relevant times, the manager of Robins Landing.[2]

The facts in the light most favorable to Plaintiffs are as follows. During the summer of 2010, Robins Landing participated in the Free Summer Lunch Program ("FSLP" or "Lunch"), a government-sponsored effort to bridge the gap between school semesters during summer break. The FSLP allows children who are in need of

---

[2] Defendant Picerne Development has no ownership interest in Robins Landing. Accordingly, the Court is unclear why Picerne Development is a party in the instant action.

financial assistance to enjoy free lunches as they would during the schoolyear.

At Robins Landing, FSLP lunches were served by several volunteers and were open to all children, regardless of whether they were residents of the apartment complex.  There is no indication in the record that adults were prohibited from sitting with their children while they ate, but, the bag lunches themselves were available only to children.  Notwithstanding, it appears that some adults, including volunteers and Robins Landing employees, may have eaten the bag lunches, although they are not permitted to do so.

During the time of the dispute, Robins Landing also appeared to have either hosted or been near a summer camp which increased the influx of children at the Lunch.  Because the room where the lunches were served only seated approximately thirty people, the volunteers had to seat the children in groups.  While it is unclear why some children were allowed to eat their lunches elsewhere, it is undisputed that on a busy day a line inevitably formed outside the door due to the lack of available seating.

On July 14, 2010, Torrence and her granddaughters attended the FSLP at Robins Landing, as they did most of the days during the summer; Orr did not attend the Lunch that day.  When Torrence arrived, Patricia Carter, volunteer serving manager,

was the only volunteer present and was yelling at the FSLP participants to be quiet and to sit down.  Torrence went over to assist Ms. Carter with handing out the lunches but Ms. Carter told Torrence that she could handle the situation.  Torrence also requested that her grandchildren have an orange, however, Ms. Carter did not allow them to have one.  Soon after, more volunteers came to put together the bag lunches and hand them out.

The next day, Plaintiffs, including Orr, attended the Lunch.  On this day, July 15, the Lunch was "enormously packed," and many of the FSLP participants were required to wait outside before seating became available.  Orr Dep. 27:4.  Plaintiffs tried to get inside but volunteer Latasha McWilliams "slamm[ed]" the door, and Plaintiffs had to wait for the other groups of participants to finish.  Torrence Dep. 47:24; Orr Dep. 29:10.  The Orr Children were part of the fourth and last group allowed to go in and be seated.

Once inside the dining area, Torrence began to argue with volunteers Carter and McWilliams about why she and her granddaughters were the last individuals to be served and why the door kept slamming in their faces.  At some point during the dispute, McWilliams became somewhat aggressive, "hovering" over Torrence while volunteer Serving Manager Carter "[held] her back."  Torrence Dep. 53:18, 20.

4

Ultimately, when they finished eating lunch, Plaintiffs left the dining hall.

Subsequently, Apartment Manager Heard confronted Torrence and Orr about the incidents on both days at the Lunch. There is some dispute about the timing of this conversation, however, it is undisputed that at the end of the confrontation, Defendant Heard told Orr that she was barred from the leasing center, the club house, the fitness center, and the FLSP lunchroom. Although Torrence testified that Heard only barred Orr from these areas, Torrence stated that she was also barred from the leasing center after she attempted to enter it. Afterwards, Plaintiffs were served with a thirty-day notice to vacate. The notice indicated that Heard had exercised her discretion under the Agreement to terminate their lease pursuant to a violation. Specifically, Heard cited Paragraph 14, inappropriate behavior, as grounds for termination.

Plaintiffs attempted to fight the eviction in Magistrate Court. Although it is unclear whether they won the dispute, Plaintiffs remained in their apartment for the remainder of their lease. On November 1, 2010, Plaintiffs, proceeding *pro se*, filed this instant action.

## LEGAL STANDARD

A party asking for summary judgment pursuant to Rule 56 "always bears the

initial responsibility of informing the district court of the basis for its motion." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. <u>Id.</u> at 322–324.

Once the moving party has met its burden, Rule 56 "requires the nonmoving party to go beyond the pleadings," <u>Celotex</u>, 477 U.S. at 324, and cite "to particular parts of the materials in the record." Fed.R.Civ.P. 56(c)(1). If the adverse party does not so respond, summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

A district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion. <u>United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.</u>, 363 F.3d 1099, 1101 (11th Cir. 2004). The district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials and must review all of the

evidentiary materials submitted in support of the motion for summary judgment. Id. at 1101–02. The district court's order granting summary judgment must indicate that the merits of the motion were addressed. Id. at 1102.

## DISCUSSION

In order to establish a race discrimination claim under § 1981, a plaintiff must show: "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." Kinnon v. Arcoub, Gopman & Assocs., Inc., 490 F.3d 886, 891 (11th Cir. 2007) (quotation omitted); see Gen. Bldg. Contractors Ass'n Inc. v. Penn, 458 U.S. 375, 391, 102 S. Ct. 3141 (1982) (stating that § 1981 can be violated only by purposeful discrimination). Thus, to survive summary judgment, Plaintiffs must identify a genuine issue of material fact as to each element.

As an initial matter, to the extent that Defendants argue that Plaintiffs' claim must fail because Plaintiffs themselves do not believe they were discriminated against on the basis of race, the Court rejects this argument. Although both Plaintiffs appear to concede this issue in their testimony, their belief of whether they were discriminated against is insufficient to either create a genuine issue of material fact, or in this case, absolve a genuine issue. See Holifield, 115 F.3d at 1564 (holding that

7

plaintiff's "opinion [that he was discriminated against], without more, is not enough to establish a prima facie case of race discrimination").  Moreover, Defendants have not pointed to any legal precedent that such a belief, by itself, disproves an element of Plaintiffs' § 1981 claims.

Looking to the remainder of Defendants' argument, Defendants appear to only contest the second element, and assert that Plaintiff's claims must fail because there is no indication that Defendants intended to discriminate against Plaintiffs on the basis of their race.  After scouring the record, the Court cannot find any direct or circumstantial evidence of discrimination, and accordingly agrees with Defendants.

Plaintiffs testified about several events, including their perceived mistreatment at the FSLP and their confrontation with the FSLP volunteers and with Defendant Heard.  Plaintiffs have also testified about how they were barred from the leasing center, the clubhouse, and from participating in the FSLP, as well as the eviction notice.  However, reading the facts in the light most favorable to Plaintiffs, the record is bereft of any evidence that indicates they were mistreated because of their race.  Absent any evidence of such intent, the Court cannot infer discriminatory animus on this record.  See e.g., Kinnon, 490 F.3d at 893-94 (declining to enunciate a precise test for proving discriminatory intent with circumstantial evidence in a § 1981 non-

employment case, but observing that the plaintiff had not "established a presumption that the late delivery and surcharge were based on discriminatory intent"). Accordingly, the evidence in the record fails to raise a "genuine dispute as to any material fact" on the second element of their § 1981 claims.  Fed. R. Civ. P. 56(c).

In conclusion, after careful scrutiny of the record, the Court finds that there is no indication that Defendants intentionally discriminated against Plaintiffs on the basis of their race.  Accordingly, Defendants' Motion for Summary Judgment [Doc. 47] is **GRANTED**.

**SO ORDERED,** this  5th day of April, 2012.

S/  C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

LMH/aes